**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CLARESTINE BRAXTON,

        Plaintiff,

v.

CITY OF NEWARK, et al.,

        Defendants.

Civil Action No.: 08-4218 (JLL)

**OPINION**

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants City of Newark and David J. Giordano ("Giordano")'s Motions for Summary Judgment against Plaintiff Clarestine Braxton ("Plaintiff") [Docket Entry Nos. 53 and 55]. Oral argument was heard on September 16, 2011. The Court has reviewed the submissions in support of and in opposition to the present Motions. For the reasons set forth below, Defendants' motions are **GRANTED** with respect to Plaintiff's federal claims under the ADA and 18 U.S.C. § 1983. Plaintiff's ADA discrimination claim and Fourteenth Amendment claim under 18 U.S.C. § 1983 have been voluntarily dismissed by Plaintiff [Docket Entry No. 73, Motion Hearing, Tr. 3:22-4:9; 4:23-25; 5:1-11]. The Court declines to exercise jurisdiction over Plaintiff's discrimination and retaliation claims under the New Jersey Law Against Discrimination ("NJLAD"), Plaintiff's claim under the Conscientious Employee Protection Act ("CEPA"), and Plaintiff's unlawful discharge claim pursuant to 28 U.S.C. § 1367(c). However, it finds Plaintiff's state law claims are timely for statute of limitations purposes.

1

# I. BACKGROUND

Plaintiff began her employment with the City of Newark Fire Department as a Fire Prevention Specialist, Inspector in 1996. (Def. 56.1 Stmt, ¶ 1; Pl. Responsive Stmt., ¶ 1). As an Inspector, Plaintiff initially performed inspections for compliance with the New Jersey Code, working outside the office or "in the field" to check exits and exit signs, lighting, smoke detectors, and occupancy limits. (Id., ¶ 3; Scott Cert., Ex. A, Braxton Dep. Tr. (Feb. 8, 2010) at 16:17-17:9). In 1999, Plaintiff was brought into the office from the field and performed the following duties and responsibilities as an Inspector: making sure smoke detector certificates got out, issuing fire code certificates, accounting for and depositing all monies collected, filing fire reports with the State of New Jersey and, once computerization occurred, entering data into the computer for fire reports. (Id., ¶¶ 4-5; Scott Cert., Ex. A, Braxton Dep. Tr. (Feb. 8, 2010) at 33:25-35:10, 37:23-38:3).

From May 2004, Plaintiff took one year of formal leave from her employer to treat a heart condition. (Lockman Cert., Ex. B, Braxton Dep. Tr. (Feb. 8, 2010 at 24:19-25; 57: 7-12). In January 2005, Plaintiff had two open-heart surgeries and replaced a valve in her heart due to suffering from Chronic Obstruction Pulmonary Disease ("COPD"). (Pl. Am. Compl., ¶ 11; Lockman Cert., Ex. B, Braxton Dep. Tr. (Feb. 8, 2010) at 22:1-14). As a result of her surgery, Plaintiff could not climb stairs or walk for long periods of time without difficulty. (Pl. Am. Compl., ¶ 12). In December 2005, while Plaintiff was still on leave, she applied for and took a Civil Service Examination for the position of Fire Prevention Specialist, Supervisor, and her name was placed on the December 28, 2005 New Jersey Department of Personnel ("NJDOP") Certification of Eligibles for Appointment to the Supervisor position (Certification List #

PL052145).  (Def. 56.1 Stmt, ¶ 13; Pl. Responsive Stmt., ¶ 13; Scott Cert., Ex. D).  John West,

Evelyn Fonseca, Walter Gray, and Gwendolyn Bullock Saleem were also included on the

Certification of Eligibles for appointment to that position.  (Id., ¶ 14; Scott Cert., Ex. D).  West's

name was removed because he had retired from City employment and Gray requested a

deferment of his appointment to be considered at a later date.  (Id., ¶¶ 15-17; Scott Cert., Exs. E-

G).  On the same date, December 28, 2005, Carolyn Harris was retained as a "Provisional"

Supervisor in the New Jersey Department of Personnel ("NJDOP")'s Provisional Appointment

Listing, even though she was not listed on December 28, 2005 Certification of Eligibles list.

(Id., ¶ 19; Scott Cert., Exs. D & G).  On March 23, 2006, the City returned the Certification of

Eligibles to the State of New Jersey, listing Fonseca and Bullock Saleem as "Appointed."  (Id., ¶

18).  Plaintiff was listed as "Retained" on said Certification of Eligibles list.  (Id.).

    On February 2, 2006, Fire Director Lowell Jones issued Executive Order No. 451

requesting that Plaintiff be approved for a permanent appointment as a Supervising Fire

Prevention Specialist, effective January 30, 2006.  (Lockman Cert., Ex. E).  In the next pay

period following the January 30, 2006 appointment, Plaintiff received a pay check reflecting the

salary increase of a promotion to Supervisor, and this pay increase continued through February

2006.  (Lockman Cert., Ex. G, 29:16-24; Ex. B, 39:18-40:8).  When the pay increase was

terminated, Plaintiff inquired about why she no longer received her pay raise and attempted to

seek help with her position and salary problems through Fire Chief Stewart and chief payroll

clerk for the Fire Department, Brenda Porter.  (Lockman Cert., Ex. B, 41:2-15, 48:10-19).

Stewart and Porter looked into the matter but did not receive an explanation as to why Plaintiff

was no longer receiving her salary increase.  (Id., Ex. B, 41:17-19).  Plaintiff also learned that

her paperwork was being held up in NJDOP even though it had been submitted in January (Id.,

Ex. B, 41:22-42:9), and that Carolyn Harris was being paid at the higher, Supervisor rate of pay,

despite having failed the Civil Service Examination and being demoted from Provisional

Supervisor to Inspector. (Pl. Am. Compl., ¶ 18). On May 2, 2006, the NJDOP issued a new

Certification of Eligibles list (#PL060920) on which Walter Gray and Plaintiff Braxton were

retained as eligibles. (Def. 56.1 Stmt, ¶ 22; Pl. Responsive Stmt., ¶ 22; Scott Cert., Ex. H). On

the same date, the NJDOP issued a Provisional Appointment Listing, naming Carolyn Harris as a

"Provisional" appointee to the position of Supervisor. (Id., ¶ 23; Scott Cert., Ex. I).

On July 1, 2006, Defendant David Giordano was appointed to the position of Fire

Director, replacing Lowell Jones. (Lockman Cert., Ex. K, 9:18-21). On August 25, 2006,

Plaintiff sent a letter to the NJDOP requesting that they look into her appointment to the

Supervisor position. (Def. 56.1 Stmt, ¶ 24; Pl. Responsive Stmt., ¶ 24; Scott Cert., Ex. J). On

the same day, Plaintiff met with Defendant Giordano. (Lockman Cert., Ex. B, 53:6-54:9; Ex.

EE). In that meeting, Plaintiff: 1) complained about discrepancies in her salary and pay (id.); 2)

spoke out about Carolyn Harris being paid for the supervisory position even though she was

doing the work of an Inspector (id.); and 3) notified Defendant Giordano that she could not climb

the stairs to punch in her time card due to her heart surgery and COPD (Pl. Am. Compl., ¶ 19).

Plaintiff continued to receive an Inspector's salary throughout the duration of her employment

subsequent to her complaints to Defendant Giordano. (Id., ¶ 20).

When Plaintiff returned in September 2006 from a brief vacation after the August 25th

meeting, she found signs posted throughout her building of employment stating, "No punch, no

pay, no exceptions," effective October 10, 2006, as well as signs advising employees that anyone

who punches a time card other than their own would be terminated. (Pl. Br. in Opp'n to Defs.'

Mots. for Summ. J., at 6; Lockman Cert., Ex. B, 55:11-25; Ex. M). Plaintiff brought the signs to

4

Stewart's attention, and Stewart went to speak with Defendant Giordano. (Id., Ex. G, 87:4;92:24).

On September 14, 2006, NJDOP acknowledged receipt of Plaintiff's August 25, 2006 letter and advised Plaintiff that Department records showed only two appointments made from the PL052145 Eligibility List. (Def. 56.1 Stmt, ¶ 25; Pl. Responsive Stmt., ¶ 25; Scott Cert., Ex. J). The NJDOP confirmed both that Plaintiff and Walter Gray's names were issued on the PL060920 Eligibility List, and that they had duly issued that Eligibility List to the appointing authority. (Id.). On the same day, Stewart wrote a memo to Plaintiff, cc'ing Defendant Giordano and Chief Clerk Brenda Porter, informing Plaintiff that he received a written notice from Plaintiff's physician regarding her inability to climb stairs. (Lockman Cert., Ex. N). After this memo was sent, Stewart was summoned to Defendant Giordano's office and was instructed by Giordano to place Plaintiff on sick leave, stating that she would not be able to return until she was physically able to punch her time card. (Lockman Cert., Ex. B, 66:16-67:6).

In September 2006, Plaintiff went to the Affirmative Action Department in the City of Newark and made a complaint to Darlene Noble concerning her Department's requirement to climb stairs to clock in despite her disability. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 23; Ex. B at 72:9-19, 99:1-100:4). On September 22, 2006, Stewart sent a memorandum to Defendant Giordano notifying him that Local 21 President Mike James told Battalion Chief Thomas Reiss that the requirement to climb stairs to punch in was contrary to union guidelines. (Defs.' Mot. for Summ. J., Ex. O). Stewart also notified Defendant Giordano that when Plaintiff confronted Reiss about the requirement upon her return to work, he indicated that he was aware of the Union President's instructions and told her that Stewart should sign her time card. (Id.). Stewart then initialed her time card to have a record of the times and dates she was on duty. (Id.)

On September 24, 2006, Plaintiff wrote a letter to Defendant Giordano, cc'ing Stewart and James, alleging that Defendant Giordano was still harassing her and ignoring federal law by refusing to grant her a reasonable accommodation regarding the requirement to climb stairs to punch her card. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. AA).

On October 11, 2006, the NJDOP sent the City of Newark a Salary of Disapproval Order disapproving of the salaries of all employees provisionally in the FPS Supervisor title, and notifying them that failure to comply may subject them to "a fine and the assessment of examination costs." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. O). On October 12, 2006, Plaintiff visited the City's doctors on Defendant Giordano's direction, and the doctor designated her able to perform the essential functions of her position, but noted that she experienced chest tightness and difficulty breathing when climbing stairs. (Def. 56.1 Stmt, ¶ 88; Pl. Responsive Stmt., ¶ 88; Scott Cert., Ex. U). Plaintiff also visited Dr. Okoya, her primary care physician, on January 19, 2007, where she requested and received a fitness for duty evaluation and complained of shortness of breath. (Id., ¶ 90; Ex. W).

In early 2007, Defendant Giordano instituted an examination, based on seniority, to determine eligibility for the FPS Supervisor position, despite the existence of an Eligibility List in effect at the time that included Plaintiff's name. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Exs. C & BB). In her deposition, Ann Gabriele, the Human Resources Manager for the New Jersey Civil Service Commission, stated that Defendant could have chosen from the existing list, but opted not to do so. (Id., Ex. Q, at 30-31). Defendant Giordano did not inform Plaintiff and another FPS that the new test would be occurring. (Id., Ex. R). On February 21, 2007, Stewart was informed by Plaintiff and other Inspectors that the closing date for filing for a Civil Service Exam for promotion to the title of FPS Supervisor was that day, and he drafted a memo to his

6

Deputy Chief, Norman J. Esparolini, concerning otherwise qualified Inspectors' complaints that they were not given proper and timely notification of the announcement of the promotion or the closing date for filing for the exam. He then requested an extension for the administration of the exam. (Id.). Chief Esparolini gave the memo to Director Giordano to notify him of the complaints. (Id.).

On April 9, 2007, Plaintiff received a letter from the NJDOP acknowledging receipt of Plaintiff's April 5, 2007 inquiry regarding her promotion to FPS Supervisor. (Def. 56.1 Stmt, ¶ 28; Pl. Responsive Stmt., ¶ 28; Scott Cert., Ex. K). The letter also stated that two appointments were made from Certification PL052145 (December 2005), and that, "[r]egrettably, your [Clarestine Braxton's] name was bypassed on the list, in accordance with civil service rules." (Id., ¶ 29).

On June 7, 2007, the NJDOP promulgated the list of exam results for FPS Supervisor, and Plaintiff was ranked first based on seniority, with Carolyn Harris ranked second. (Id., ¶¶ 34-36; Scott Cert., Ex. L). However, Braxton was again not promoted to the position of Supervisor. On June 19, 2007, the NJDOP issued a "Certification of Eligibles" for appointment to Supervisor, and Carolyn Harris was listed as "appointed" with a hand-written note stating "best suited provisional." (Id.). Plaintiff was listed next to the dates "12/22/05" and "06/07/07" with "Retain" written in the "Comments" box. (Id.).

On July 18, 2007, Defendant Giordano wrote a memo to City Clerk Robert Marasco stating that Lowell Jones' Executive Order #451 promoting Plaintiff to Supervisor was "never completed by the previous administration," stating that a new test and certification for FPS Supervisor had been called, and they were in the decision-making process regarding whom to promote. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. U). On July 19, 2007, Defendant

7

Giordano assigned Plaintiff to the Deputy Mayor Salahuddin's Task Force. (Def. 56.1 Stmt, ¶¶ 53-54; Pl. Responsive Stmt., ¶¶ 53-54; Scott Cert., Ex. S). On July 23, 2007, Stewart wrote to Defendant Giordano to protest Plaintiff's reassignment to the Deputy Mayor's Task Force, noting that the Deputy Mayor "prefers a male Inspector because of some of the tenuous situations that are involved," and was satisfied with the male Inspector that Stewart himself appointed. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. W). Stewart further stated that, since Plaintiff was serving as the Financial Officer for the Division of Fire Prevention and Life Safety, and was also supervising five Inspectors in her district, "[i]t would serve no useful purpose for her to work with the Task Force when we have other Inspectors with fewer responsibilities that can fulfill the need for a Task Force Inspector." (Id.). He described Plaintiff's work as "excellent," stressing the importance of her position and her expertise in fulfilling her duties: "To arbitrarily move Supervisor Braxton to another assignment will have an adverse effect on the functioning capabilities of this office. The move would have no positive effect. In fact it would be punitive." (Id.). On July 27, 2007, Giordano responded to Stewart, stating that "Inspector Braxton is not a Supervisor; she is a Fire Inspector according to the Department of Personnel of the State of New Jersey . . . Please inform her that she is to be dressed in the proper Inspector's uniform, not a Supervisor's uniform." (Id., Ex. X).

Effective July 28, 2007, Plaintiff went on "stress leave due to intolerable working conditions." (Def. 56.1 Stmt, ¶¶ 63-64; Pl. Responsive Stmt., ¶¶ 63-64; Scott Cert., Ex. B, ¶ 33). Plaintiff effectuated her leave by submitting a doctor's note through her chain of command directing her not to work due to stress on August 1, 2007. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 10). The doctor's note specified Plaintiff's symptoms as sleeplessness, nausea, and feeling overwhelmed. Plaintiff had also gone to a psychiatrist, Dr. Williams, seeking medical

assistance for her stress. She completed two sessions with the psychiatrist, discussing her stress and its sources in her job. On the same day, August 1, 2007, Stewart sent a memo to Giordano, stating that he would comply with Giordano's orders, that Carolyn Harris would be officially assigned supervisory responsibilities while Plaintiff would be directed to wear the Inspector's uniform and assume the duties of Inspector. (Id., Ex. Y). Plaintiff received her last regular wages on July 28, 2007. On May 1, 2008, Plaintiff's disability retirement became effective.

Plaintiff filed her Complaint in this Court on August 22, 2008. Defendant City of Newark filed its motion for summary judgment on May 26, 2011, and Defendant Giordano filed his motion for summary judgment on June 2, 2011.

## II. LEGAL STANDARD

### 1. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), a court grants summary judgment to a moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must first show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is not appropriate where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Further, "the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting

the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." Id. at 248-49, citing First National Bank of Arizona v. Cities

Service Co., 391 U.S. 253, 288-89 (1968).

Once a moving party establishes that there is no genuine dispute as to any material fact,

the burden shifts to the non-moving party to present evidence that a genuine issue of material

fact compels a trial. Id. at 324. The non-moving party must offer specific facts that establish a

genuine issue of material fact and may not simply rely on unsupported assertions, bare

allegations, or speculation. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001);

Ridgewood Bd. of Educ. v. N.E. ex. rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). This requires

"more than a mere scintilla of evidence" in a non-movant's favor, and cannot rest on

unsupported assertions, speculation, or conclusory allegations. Carlson v. Arnot-Ogden

Memorial Hosp., 918 F.2d 411, 413 (3d Cir. 1990). The Court must consider all facts presented

and view all the inferences in a light most favorable to the non-moving party, resolving all

doubts against the moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962);

Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985). Finally, the court must take as true all

allegations of the non-moving party that conflict with those of the movant. Id.

**2. Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction if: (1) the claim raises a

novel or complex issue of State law; (2) the state law claim substantially predominates over the

claims over which the district court has original jurisdiction; (3) the district court has dismissed

all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are

other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367 (c). The determination to

decline to exercise jurisdiction is discretionary and the "general approach is for a district court to

. . . hold that supplemental jurisdiction should not be exercised when there is no longer any basis

for original jurisdiction." Townsend v. N.J. Transit & Amalgamated Transit Union, 2010 U.S.

Dist. LEXIS 102451, at * 14 (D.N.J. Sept. 27, 2010); see also City of Chicago v. Int'l Coll. Of

Surgeons, 522 U.S. 156, 172 (1997)("pendent jurisdiction 'is a doctrine of discretion, not of

plaintiffs right,' and that district courts can decline to exercise jurisdiction over pendent claims

for a number of valid reasons)(citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).


### III.  DISCUSSION

#### A.  Plaintiff's ADA Retaliation Claim

In her Amended Complaint, Plaintiff claims that Defendants City of Newark and David

Giordano retaliated against her due to her opposition to Defendants' violations of the ADA in

that Defendants transferred her to a position which she could not perform with medical

restrictions in violation of 42 U.S.C. § 12203(a).  Since this Court finds that Plaintiff did not

exhaust administrative remedies as required under the ADA, it must grant Defendant's Motion

for Summary Judgment on this claim.

Defendants argue that Plaintiff's ADA claim should be dismissed because she failed to

exhaust all administrative remedies before filing in federal court as required under 42 U.S.C. §

12117(a) of the ADA.  Defendants cite Robinson v. Univ. of Med. and Dentistry of NJ, which

requires that plaintiffs "bringing employment discrimination charges under the ADA must

comply with the procedural requirements set forth in Title VII of the Civil Rights Act of 1964, as

amended, at 42 U.S.C. § 2000e-5."  2006 U.S. Dist. LEXIS 85121, *3 (D.N.J. 2006), citing Buck

v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)).  In New Jersey specifically,

Defendants argue that "[t]he ADA requires claimants in a state with a state fair employment

agency to file a charge of discrimination with such agency within 300 days of the alleged

unlawful employment practice." Anderson v. D.S.M.N.V., 589 F. Supp. 2d 528, 534 (D.N.J.

2008). That agency in New Jersey is the New Jersey Division on Civil Rights ("NJDCR"), and

Defendants claim that since Plaintiff did not file a charge with the EEOC within 180 days of the

alleged unlawful employment practice nor with the NJDCR within the requisite 300 days, she

has failed to exhaust administrative remedies. Saracino v. State Dep't of UI/DT Fin., 251 Fed.

Appx. 95 (3d Cir. 2007). "Non-exhaustion [of administrative remedies] constitutes a possible

ground for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."

Phillips v. Sheraton Soc'y. Hill, 163 Fed. Appx. 93, 94 (3d Cir. 2005).

      Plaintiff makes two arguments in response. First, she argues that the exhaustion

requirement under the ADA is a prudential requirement under Third Circuit law and can thus be

bypassed by showing futility. Second, she argues that she did in fact exhaust administrative

remedies by making a complaint to the Affirmative Action Department.

1) Exhaustion Requirement: Futility

      Plaintiff argues that, under Third Circuit law, exhaustion under the ADA is a prudential

requirement and is thus not a jurisdictional prerequisite. See Wilson v. MVM, Inc., 475 F.3d

166, 174-75 (3d Cir. 2007); Buck v. Hampton Township School Dist., 452 F.3d 256, 262 (3d Cir.

2006). Federal statutes with prudential exhaustion requirements can be bypassed through a

showing of futility. Wilson, 475 F.3d at 174-5. With regard to retaliation claims specifically,

Plaintiff cites to non-Third Circuit law to argue that an exception to exhaustion of administrative

remedies can be made where a plaintiff is "naturally gun shy about inviting further retaliation"

by filing a subsequent administrative complaint based on retaliation. Jeffers v. Chao, 2004 U.S.

Dist. LEXIS 27541, at *18 (D.D.C.2004)(citing Brown v. Hartshorne Public School Dist., #1,

864 F.2d 680, 682 (10th Cir. 1988)).  Plaintiff's showing of futility focuses on Plaintiff's having witnessed "first-hand that her complaints of employment discrimination were fully futile and in fact invited retaliation."  (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 30).  Retaliation resulted, Plaintiff claims, after Plaintiff complained to Giordano at their August 25th meeting; after Plaintiff complained to the Affirmative Action Department about Giordano's disability discrimination; as well as after Plaintiff's multiple complaints to NJDOP, Stewart and Defendant Giordano himself which resulted in denial of promotions, placing her on sick leave, and other adverse actions.  Hence, Plaintiff argues, she could not rely on her employer to remedy the situation as he was doing exactly the opposite of providing a remedy.

"[P]rudential exhaustion requirements will be excused in only a narrow set of circumstances," and in the case of the futility exception, "where a party provides 'a clear and positive showing' of futility."  Wilson, 475 F.3d at 175.  While Defendants argue that they provided a reasonable accommodation to Plaintiff by allowing Stewart to punch in on her behalf (Defs.' Mot. for Summ. J., Ex. O), the record is not clear on exactly when Defendants recognized Plaintiff's complaint and on what date they accommodated her.  It may be the case that Defendants demonstrated a consistent refusal to recognize her claims to the Supervisor position, and the record shows that Plaintiff had been notifying her employers and the NJDOP about alleged discrepancies in her pay and failure to promote for close to a year and a half.  However, nothing in the record provides a clear and positive showing that bringing in an external party such as the NJDCR or the EEOC to Plaintiff's employment dispute would not have provided Plaintiff the relief she sought for the alleged retaliations by Defendants.  While Plaintiff's continued complaints to her employer may show that making additional complaints to the same parties would be futile, the ADA's statutory framework provides a critical function for

administrative agencies precisely to serve as neutral, external parties to resolve disputes based on expertise and less formal mediation efforts.  See Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 497 (W.D. Pa. 2007), citing Anjelino v. New York Times Co., 200 F.3d 73, 93 (3d Cir. 199)).  Given the high showing required for Plaintiff to establish futility, and the lack of evidence in the record regarding the futility of Plaintiff's attempts to invite the statutorily provided bodies to assist in her employment matter, this Court must find that Plaintiff has not made a sufficient showing to bypass the exhaustion requirement under the ADA through the futility exception.

2) Exhaustion Requirement: Alternative Exhaustion

Plaintiff argues that, in the alternative, she exhausted her administrative remedies by making a complaint to the Affirmative Action Department.[1]  Plaintiff cites to City of Newark policy, issued as Fire Department Executive Order No. 477, following Article 25 and General Order A-5, that an employee may make a complaint to the Affirmative Action Department in lieu of taking other action.  (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. EE).  Thus, Plaintiff argues she exhausted her remedies pursuant to Newark's local policy.  She does not specify when this complaint to the Affirmative Action Department was filed within the requisite 300-day filing period.

Plaintiff's alternative exhaustion requirement may be supported by the federal statute governing the ADA's enforcement provisions (42 U.S.C. § 2000e-5, reproduced below) and Third Circuit case law which holds that "42 U.S.C.S. §§ 2000e to 2000e-17 . . . states that the 180-day filing period applies unless the person aggrieved has initially instituted proceedings with a state or local agency.  42 U.S.C. § 2000e-5(e)." Kocian v. Getty Refining & Marketing Co.,

---

[6] Plaintiff's attorney, Mark Frost, requested all documents, e-mails and other records relating to her complaint made to the Affirmative Action Department in a letter to Defendants' counsel, Jeffrey Oshin, Esq. at Hardin, Kundla, McKeon & Poletto, in lieu of a formal written Request for Production of Documents dated June 23, 2010 [Docket Entry No. 68-3, Ex. CC].  This request was pursuant to the parties' mediation that occurred on June 21, 2010. Plaintiff confirmed in oral argument on September 16, 2011, that no documents could be found regarding this complaint.

707 F.2d 748 (3d Cir. 1983).  However, for a state or local agency to be designated as a Fair

Employment Practices Agency ("FEPA") for the purposes of dual filing and meeting the ADA's

exhaustion requirement, the relevant agency must be qualified by EEOC regulations to so serve

that function.  Other than the EEOC, the only agency in New Jersey listed under the relevant

EEOC regulation in which a discrimination or retaliation complaint can be filed for FEPA dual-

filing purposes is the NJDCR.  See 29 C.F.R. 1601.74.  Therefore, since Plaintiff only

complained to the Affirmative Action Department and not to the EEOC or NJDCR within the

statutory time period, she is unable to overcome the exhaustion requirement under the ADA, and

her ADA claim must be dismissed.


**B.  Plaintiff's Section 1983 First Amendment Claim**

    Plaintiff's Section 1983 claim alleges that Defendants, acting under color of State law,

deprived her of her First Amendment right to free speech when they retaliated against her for

speaking out about Defendants' failure to promote her.  (Pl.'s Am. Compl., ¶ 56).  Specifically,

she alleges that she complained to various City officials, including Defendant Giordano and the

NJDOP, about discrepancies in her title and salary, failure to accommodate her disability, and

transfer to the Deputy Mayor's Task Force.  As a result of those exercises of free speech,

Plaintiff claims, Defendants denied her the title she had been granted, kept her at a lower pay rate

than her former position for a year and a half, and denied her reasonable accommodations for her

medical condition.

    Defendants argues that Plaintiff's personal grievances are not "protected" speech as a

matter of law under Connick v. Myers, 461 U.S. 138 (1983), and Feldman v. Philadelphia

Housing Authority, 43 F.3d 823, 828 (3d Cir. 1994).  Defendants argue that Plaintiff does not

satisfy the requisite elements for proving that a public employer violated a public employee's speech rights through retaliation, which are: (1) the speech in question was a matter of public concern; (2) the plaintiff's interest in the speech outweighs the state's interest in promoting the efficiency of the public services it provides through its employees; and (3) that the protected speech was a substantial or motivating factor in the alleged retaliatory action." See Compatello v. LaBruno, 2005 U.S. Dist. LEXIS 27878, *11 (D.N.J. July 12, 2005). Since none of Plaintiff's communications were protected speech, Defendants argue, the Court need not consider the other two requisite elements to grant Defendants summary judgment on this claim. Whether speech is protected as a matter of public concern is a question of law. Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).

In Connick v. Myers, a public employee, Sheila Myers, brought a Section 1983 action claiming that her First Amendment rights were violated when she was terminated from her position as an Assistant District Attorney due to her polling of her co-workers through a questionnaire that she drafted soliciting views on their satisfaction with various aspects of their employment at the District Attorney's office in Orleans Parish. The questionnaire was distributed after she was transferred to prosecute cases in a different section of the criminal court, and she refused, making complaints about the office transfer policy, the need for a grievance committee, and other concerns. The Supreme Court distinguished between speech as a citizen on matters of "public concern" and speech as an employee on matters of "personal interest," holding that "when an public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personal decision taken by a public agency allegedly in reaction to the employee's behavior."

16

Connick, 461 U.S. at 147.  Further, "when an employee expression cannot be fairly considered as relating to any matter of political, social or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Id. at 146.

Defendants cite four cases to show that Plaintiff's speech involved personal grievances rather than matters of public concern.  In Cooper v. Cape May County Bd. Of Soc. Servs., plaintiff clerk in the County offices complained to the NJDOP concerning a dispute with his supervisors about a difficult working relationship with a co-worker, leave authorization, a reprimand about time cards, and the use of a postage meter. 175 F. Supp. 2d 732 (D.N.J. 2001). Plaintiff argued that his complaints were a matter of public concern because they implicated issues of public employee job classifications within the Civil Service System, and were thus entitled to protection under the First Amendment.  The Court found that plaintiff's complaint was "related directly to his own situation" and "was motivated at all times by concern for . . . [that] situation, rather than by a desire to ensure formal adherence to a statutory employment scheme or to expose wrongdoing on the part of his superiors in the name of the public good." Id. at 745.  In Compatello v. LaBruno, the District Court of New Jersey found that a police officer's complaints relating to perceived delays in promotion and issues concerning examinations by the NJDOP were mere extensions of a dispute over his promotion rather than matters of public concern.  Thus, the Court concluded, his complaints were not protected speech.  Compatello, 2005 U.S. Dist. LEXIS 27878 at *16.  In Gaj v. U.S. Postal Service, the Third Circuit affirmed the district court's granting of summary judgment in favor of employer postmasters who refused to rehire plaintiff, finding that plaintiff "was merely expressing himself as an employee dissatisfied with his own conditions of employment" rather than seeking to inform the public

about governmental wrongdoings or a breach of public trust.  800 F.2d 64, 67 (3d Cir. 1986).

Finally, in Saia v. Haddonfield Sch. Dist., the court granted summary judgment to employer

School District where plaintiff music teacher and band leader alleged retaliation for her exercise

of protected speech.  2007 U.S. Dist. LEXIS 67018 (D.N.J. September 10, 2007).  Plaintiff's

teaching contract was not renewed after he spoke out about the credentials of another employee

and the failure of that co-employee to be properly qualified for the position that that employee

held.  The court found that plaintiff's complaints were motivated by self-interest rather than

community betterment, and thus did not constitute a matter of public concern.[2]  Defendants

analogize Plaintiff's speech to those in the cited cases by arguing that Plaintiff's complaints were

limited to her personal interest and dissatisfaction that someone other than she had been

promoted.  Her grievances, they argue, were specific to her own personal circumstances and

didn't involve a matter of public concern, so were not protected under the First Amendment.

   Plaintiff claims that her speech pertained to matters of public concern, and that

Defendants have waived any arguments with respect to the final two prongs required to show a

First Amendment retaliation claim.  A matter of public concern, Plaintiff argues, is one that "can

be fairly considered as relating to any matter of political, social or other concern to the

community." Muzslay v. City of Ocean City, 238 Fed. Appx. 785, 789 (3d Cir. 2007).  Further,

the "content, form and context" of the statement bear on the question of public concern.

Connick, 461 U.S. at 147-8.

   Plaintiff contends that the reason her speech was a matter of public concern was twofold.

First, her speech concerned her disability, Defendants' implementation of a policy which

knowingly violated laws regarding the rights of disabled employees, and constituted harassment

---

[2] Defendants also cite Kadetsky v. Egg Harbor, which held that a teacher's speech about school policy was not a matter of public concern but motivated by plaintiff's desire to protect his reputation.  164 F. Supp. 2d 425 (D.N.J. 2000).

of a disabled individual.  Second, her speech concerned Defendants' non-compliance with

NJDOP and Civil Service rules and regulations regarding promotion, thus affecting the entire

Fire Department.  Plaintiff and other employees complained to Stewart about the manipulation of

the testing process and not receiving notice of the promotional test, events which did not comply

with the Civil Service rules.  Plaintiff's complaint to Giordano specifically referenced his failure

to comply with disability law and his failure to comply with NJDOP regulations, thus

constituting a matter of public concern according to Plaintiff.

In support of this contention, Plaintiff cites to the Supreme Court's statement in Connick

that the "right to protest racial discrimination" was "a matter inherently of public concern." 461

U.S. at 148.  She further cites to Azzaro v. County of Allegheny, which has held that "speech

disclosing public officials' misfeasance" is protected speech under the First Amendment since

such information is "relevant in evaluating the performance of a public office or official." 110

F.3d 968, 978 (3d Cir. 1997).  Azzaro goes on to conclude that, "when [gender discrimination is]

practiced by those exercising authority in the name of a public official, [it] is inherently a matter

of public concern." Id.  The Third Circuit has also concluded that complaints about race

discrimination were a matter of public concern even though they were expressed because of

personal employment problems.  Rode v. Dellaciprete, 845 F.2d 1195 (3d Cir. 1988)

("Dismissing Rode's speech as unprotected merely because she had a personal stake in the

controversy fetters public debate on an important issue because it muzzles an affected public

employee from speaking out").[3]  Plaintiff distinguishes her case from all of those cited by

Defendants by arguing that, in the cases Defendants cited to, "plaintiffs merely complained about

---

[3] In Rode, plaintiff was a civilian employee of the Pennsylvania State Police who was suspended for two days after participating in a published interview in which she suggested that the State Police engaged in retaliatory harassment against her based on racial discrimination.  The Third Circuit overturned the District Court's dismissal of her Section 1983 First Amendment claim, finding that her speech was protected as a matter of public concern.

routine workplace issues and made no allegations of unlawful discrimination based on a statutorily protected class, let alone allegations of unlawful conduct by a public official." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 51).

While some of Plaintiff's complaints appear to involve matters of public concern, they are more accurately characterized as personal grievances relating to an employment dispute concerning her promotion. A number of Plaintiff's direct communications to Defendant Giordano, both written and oral, regarding her inability to climb stairs explicitly mentioned her disability and alleged that Defendant's refusal to accommodate her constituted unlawful discrimination based on her disability (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. AA). Further, while we have no evidence of Plaintiff's complaint to the Affirmative Action Department, Plaintiff asserts that the complaint explicitly involved an allegation of discrimination based on her disability. A public official discriminating against an employee due to a disability presents a concern to the community and goes against the purpose of the ADA, which was in part "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to invoke the sweep of congressional authority . . . in order to address the major areas of discrimination faced day-today by people with disabilities." 42 U.S.C. § 12101(b).

However, these communications and complaints, taken alone, do not rise to the level of speech involving matters of public concern since the Court must consider the "content, form and context" of the statements as they bear on the question of public concern. Connick, 461 U.S. at 147-8. Plaintiff's other communications with Defendant Giordano and the NJDOP do not mention her disability at all when she complains about Defendants' denials of her promotion. (See Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., Ex. J; Def. City of Newark's Mot. for

Summ. J., Exs. C, J, and K). While a speaker's motive, though often a relevant part of the context of speech, is not dispositive in determining whether a particular statement was a matter of public concern, Plaintiff's characterization of her complaints in these communications indicate that her primary concern did not have to do with disability discrimination *per se*. See Azzaro, 110 F.3d at 978. Rather, they concerned the fact that she was not being paid the appropriate salary of FPS Supervisor and "was advised that this matter was politically related." (Def. City of Newark's Mot. for Summ. J., Ex. K). There is little evidence that she reported violations of the Merit System Rules up her chain of command or tried to publicize the NJDOP's notices of violations to expose a policy of general concern that favors those who do not have disabilities, such as Harris, over those who do. Further, unlike the plaintiff in Rode, Plaintiff did not make public statements to the press about her concerns regarding disability discrimination in the Fire Department. The dicta that Plaintiff cites to in Connick in fact distinguishes the AUSA plaintiff in that case from a plaintiff in another Supreme Court case, Givhan v. Western Line Consol. School Dist., "where an employee sp[oke] out as a citizen on a matter of general concern, not tied to a personal employment dispute." Connick, 461 U.S. at 148 n. 8 (citing Givhan, 439 U.S. 410, 415-16 (1979)). Plaintiff's dispute regarding alleged disability discrimination and her promotion are thoroughly intertwined, and very much "tied to a personal employment dispute." The law does not support the contention that, every time an employee complains about her own personal disability, it becomes a matter of public concern.

Finally, it does not appear that Plaintiff's case is that clearly distinguishable from those cases cited by Defendants in which the courts found that complaints were not a matter of public concern. More specifically, Plaintiff's claim that none of the cases Defendants cited dealt with unlawful discrimination or the unlawful conduct of a public official is wrong. In Cooper, the

plaintiff alleged gender discrimination and official administrative misfeasance on the part of his supervisor, but that case held that speech related to a supervisor's behavior was not protected because public interest was lacking. <u>Cooper</u>, 175 F. Supp. 2d 732. <u>Compatello</u> concerned complaints about NJDOP inefficiency and delay, but was very close to Plaintiff's case in that the communications found not to be "protected speech" concerned a plaintiff's private communications regarding promotion disputes between his supervisor and the NJDOP.

For these reasons, the "content, form, and context" of Plaintiff's speech and communications are more appropriately categorized as personal grievances than expressions of matters of public concern. They are therefore not "protected speech" for the purposes of a Section 1983 violation of Plaintiff's First Amendment rights. Since this Court grants Defendants' Summary Judgment Motions as to Plaintiff's Section 1983 First Amendment claim and Plaintiff's ADA retaliation claim, it has dismissed all of Plaintiff's claims over which it has original jurisdiction. <u>See</u> 28 U.S.C. §§ 1331.

## C. Plaintiff's New Jersey State Law Claims

The remaining New Jersey state law claims include Plaintiff's discrimination and retaliation claims under the NJLAD, Plaintiff's CEPA, and Plaintiff's unlawful discharge claim. Once a federal district court has dismissed all federal claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the surviving state law claims. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Davis v. City of Newark</u>, 2011 U.S. App. LEXIS 13236, at *5 (3d Cir. 2011; <u>Figueroa v. Buccaneer Hotel, Inc.</u>, 188 F.3d 172, 182 (3d Cir. 1999). In dictum in the <u>United Mine Workers v. Gibbs</u>, the Supreme Court said that where "federal claims are dismissed before trial, . . . the state claims should be dismissed as well." 383 U.S. at 726. Thus, the "general approach is for a district court to . . . hold that supplemental jurisdiction

22

should not be exercised when there is no longer any basis for original jurisdiction." <u>Townsend,</u>
2010 U.S. Dist. LEXIS 102451, at * 14. Therefore, the Court declines to exercise supplemental
jurisdiction over Plaintiff's state law claims.

However, the Court finds that Plaintiff's New Jersey state law claims are not time barred
as Defendants claim. Defendants assert that the statute of limitations with respect to Plaintiff's
claims should run from Defendants' alleged failure to promote Plaintiff from the December 28,
2005 "Certification of Eligibles," or at the latest, from a second "Certification of Eligibles"
issued on May 2, 2006. Since Plaintiff filed her action on August 22, 2008, she exceeded any
statute that requires filing within either one- or two years from the date of injury.

Plaintiff argues that she did not exceed the statute of limitations since her meeting with
Giordano, the event that allegedly triggered all subsequent discriminatory and retaliatory acts
relevant for her NJLAD claims, occurred on August 25, 2006. Plaintiff also claims that
Defendants' retaliation culminated in her constructive discharge, effective May 1, 2008, a few
months before her action was filed, and cites to <u>Nance v. City of Newark</u>, 2010 U.S. Dist. LEXIS
64606, at *5-7 (D.N.J. 2010)("The statutory period . . . is calculated from the date of Plaintiff's
termination (i.e., the act of retaliation)–not from the date that Plaintiff filed his various
complaints. . . . Accordingly, the date of accrual for Plaintiff's retaliation claims is the date that
the adverse action(s), if any, were taken against him.").

It is unclear why Defendants place the date of accrual before the date that even they
acknowledge a complaint by Plaintiff was lodged with Defendant Giordano. Defendants claim
that they provided a reasonable accommodation to Plaintiff in the form of allowing Stewart to
punch Plaintiff's time card on her behalf only subsequent to her complaint being lodged on that
date. Given that Plaintiff asserts a series of "discrete discriminatory acts" subsequent to this

date–including her "demotion" on July 18, 2007, her transfer to the task force on July 19, 2007, and her constructive discharge on May 1, 2008, Plaintiff seems well within the two-year period required for filing actions under the NJLAD.  See Montello v. Haynes, 133 N.J. 282 (1993)(holding that the two-year statute of limitations period set forth in N.J.S.A. 2A:14-2 applies to NJLAD claims).

With regard to Plaintiff's CEPA claim, the New Jersey Supreme Court has held that a cause of action accrues on the date of actual discharge, Alderiso v. The Medical Center, 167 N.J. 191 (2001), and this can include the date of resignation.  Daniels v. The Mutual Life Ins. Co., 340 N.J. Super. 11, 18 (App. Div. 2001).  Since Plaintiff resigned effective May 1, 2008, her filing of her complaint on August 22, 2008 is well within the specified one-year statute of limitations required under CEPA and the two-year statute of limitations required for constructive discharge claims. See N.J.S.A. 34:19-5 (CEPA) and Ramos v. Pharm. Formulations, 2007 N.J. Super. Unpub. LEXIS 642, *11 (App. Div. 2007) (constructive discharge).

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are **GRANTED** with respect to Plaintiff's federal claims under the ADA and 18 U.S.C. § 1983.  The Court declines to exercise jurisdiction over Plaintiff's claims under New Jersey state law pursuant to 28 U.S.C. § 1367(c), but finds Plaintiff's state law claims timely for statute of limitations purposes.

DATED: October 13, 2011

Jose L. Linares
United States District Judge

24